UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a/s/o Harris Corporation | INDEX: 07cv5872 (PKC) |
| Plaintiff, | **ANSWER, CROSS-CLAIM AND THIRD-PARTY COMPLAINT** |
| - against - | |
| PORT AIR CARGO INTERNATIONAL CORP.; ATLAS AIRLINES; ATLAS AIR INC.; SKS LOGISTICS | |
| Defendants | |

ATLAS AIRLINES and ATLAS AIR INC.

      Third-Party Plaintiffs

- against –

C.A.L. CARGO AIRLINES

      Third-Party Defendant

      Defendant ATLAS AIR INC. (improperly sued as ATLAS AIRLINES and ATLAS AIR INC. and hereinafter collectively referred to as "ATLAS"), by its attorneys, MENDES & MOUNT, L.L.P., as for its ANSWER to PLAINTIFF'S Complaint, upon information and belief alleges as follows:

1. Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 1;

2. Defendant Atlas denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, except that it admits that Atlas Air, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Purchase, NY.

3. Defendant Atlas denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 3, except that it admits that Atlas does business in the State of New York.

4. Defendant Atlas denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 4, except that it admits that Atlas does business in the State of New York and that Atlas Air, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Purchase, NY;

5. Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 5;

6. Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 6;

7. Denies each and every allegation contained in paragraph 7;

8. Denies each and every allegation contained in paragraph 8;

9. Denies each and every allegation contained in paragraph 9;

10. Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 10;

11. Denies each and every allegation contained in paragraph 11, except that it admits that Atlas does business in the State of New York and that Atlas Air, Inc. is a

corporation organized under the laws of Delaware with its principal place of business in Purchase, NY;

12. Denies each and every allegation contained in paragraph 12; and

13. Denies each and every allegation contained in paragraph 13.

## FIRST AFFIRMATIVE DEFENSE

14. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

15. The damages allegedly sustained by Plaintiff were caused or contributed to by Plaintiff's own negligence or culpable conduct and Atlas is, therefore, not liable to plaintiff and/or any other party to this lawsuit.

## THIRD AFFIRMATIVE DEFENSE

16. Plaintiff is barred from any recovery from Atlas because it failed to give timely notification of a claim or a complaint in writing.

## FOURTH AFFIRMATIVE DEFENSE

17. The damages allegedly sustained by plaintiff were caused by the direct and proximate negligence or intentional conduct of other parties, their agents or employees, or by others unknown at this time over whom ATLAS had no control at any time relevant hereto, and in the event ATLAS is found liable, which liability is expressly

denied, ATLAS will be entitled to indemnification, contribution or apportionment of liability pursuant to applicable law.

### FIFTH AFFIRMATIVE DEFENSE

18. The damages allegedly sustained by plaintiff were not proximately caused by any negligence or culpable conduct on the part of ATLAS.

### SIXTH AFFIRMATIVE DEFENSE

19. That the plaintiff could, with due diligence, have obtained personal jurisdiction over tortfeasors not a party to this lawsuit and thus the culpability of these missing or absent tortfeasors may be computed into the apportionment of total culpability causing the subject occurrence.

### SEVENTH AFFIRMATIVE DEFENSE

20. Plaintiff failed, refused or neglected to take reasonable steps to mitigate its damages, if any, thus barring or diminishing his recover herein.

### EIGHTH AFFIRMATIVE DEFENSE

21. That, if and in the event plaintiff was damaged as alleged in the Complaint, plaintiff's recovery is subject to the conditions of contract of the Air Waybill.

## TENTH AFFIRMATIVE DEFENSE

22. ATLAS reserves the right to raise additional affirmative defenses based upon the facts developed through discovery.

## AND AS FOR ITS FIRST CROSS-CLAIM AGAINST SKS LOGISTICS

23. Upon information and belief any damages suffered by the plaintiff as alleged in the Complaint, if sustained by reason of the negligent acts and/or omissions of Atlas were due to the primary negligence, acts and/or omissions of co-defendant SKS Logistics ("SKS"), its agents, servants and employees, in performing services and otherwise in maintaining the area of the accident, and in failing to exercise care and caution under the circumstances then and there existing. SKS negligently and carelessly failed to provide for or safeguard against occurrences or accidents that happened to Plaintiff and were otherwise careless and negligent in other respects without any negligence on the part of Atlas.

## AND AS FOR ITS SECOND CROSS-CLAIM AGAINST SKS LOGISTICS

24. If Atlas is found liable in whole or in part for the damages sustained by Plaintiff, then Atlas is entitled to contribution from SKS pursuant to Civil Practice and Rules, Section 1401, for the entire amount of any judgment or for such proportionate share of any judgment as represents the culpable conduct or breach of duty attributable to Atlas as determined by the trier of fact.

### AND AS FOR ITS THIRD CROSS-CLAIM AGAINST SKS LOGISTICS

25. Article 4 of the Aircraft Charter Agreement entered into as of May 30, 2006, by and between Atlas, states that "[SKS] assumed full liability for all cargo tendered during transportation hereunder ***prior to and during loading*** and during and after the cargo is offloaded from the Aircraft." (emphasis added). (A copy of the Aircraft Charter Agreement is attached hereto as "Exhibit A.")

26. In addition, pursuant to Article 4 of the Aircraft Charter Agreement, SKS agreed to "maintain adequate insurance ***to cover all cargo liability*** for any loss, delay, or damage to cargo tendered hereunder." (emphasis added).

27. Upon information and belief, plaintiff's goods were damaged prior to loading on or after offloading from Atlas's aircraft.

28. SKS has an implied duty of dealing in good faith and to abide by the provisions agreed to in said contract. Therefore, SKS is liable and has the contractual responsibility to defend, indemnify and insure Atlas in this matter.

### AND AS FOR ITS THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANT C.A.L. CARGO AIRLINES

29. Upon information and belief, C.A.L. CARGO AIRLINES is a corporation authorized to do business in the State of New York with an office and place of business in New York, NY.

30. Plaintiff in the within action has alleged that it has sustained damages to a shipment of communications equipment and shelters which moved from New York to Algeria pursuant to co-defendant Port Air Cargo International Corp. Air Waybills

JFK-2493901 dated on or about May 12, 2006 and JFK-2495301 dated on or about May 15, 2006; Atlas Airlines, Inc. Air Waybills 369-3564-0495 and 369-3564-0496 both dated May 31, 2006; and other Air Waybills (Master Air Waybill 700-76102574 and 020-45702996).

31. Upon information and belief, plaintiff's goods were damaged prior to delivery to Atlas.

32. To the extent plaintiff's goods were damaged, such damage was caused upon information and belief solely by the failure or omissions of the third-party defendant C.A.L. CARGO AIRLINES.

33. If Atlas is found liable for any damage as alleged in the complaint, the sole cause of such damages was the negligence or other failure of C.A.L. CARGO AIRLINES.

34. As a result of the former acts and omissions, Atlas is entitled to have contribution from the third-party defendant C.A.L. CARGO AIRLINES for all sums which Atlas may be held liable to plaintiff, including reasonable attorney's fees and costs and disbursements of this action.

**WHEREFORE,** ATLAS demands judgment as follow:

1. Dismissing Plaintiff's Complaint in its entirety together with costs and disbursements.

2. For a declaration that SKS is liable and has the contractual responsibility to defend, indemnify and insure Atlas in this matter.

3. For a declaration that if Atlas is held liable to Plaintiff that judgment be rendered against co-defendant SKS and third-party defendant C.A.L. CARGO AIRLINES. determining their responsibility for the damages sustained by Plaintiff and that SKS

and C.A.L. CARGO AIRLINES be obliged to contribute to the amount of any judgment or settlement in favor of plaintiff in proportion to each of their respective responsibilities.

4. Attorneys' fees and costs incurred herein from third-party defendant C.A.L. CARGO AIRLINES and co-defendant SKS.

5. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 17, 2007

*Roberta Miranda* (signature)

Roberta Miranda, Esq. (RM5818)
MENDES & MOUNT, LLP
750 Seventh Ave.
New York, NY 10019-6829
212-261-8000
Attorneys for Defendants
ATLAS AIRLINES and ATLAS AIR INC.

David L. Mazaroli
LAW OFFICES OF DAVIS MAZAROLI
Attorney for Plaintiff
11 Park Place – Suite 1214
New York, NY 10007
212-267-8480

SKS LOGISTICS
Zuidstraat 8, B-8400
Oostende, Belgium

Patrick Michael De Charles II
Cichanowicz, Callan, Keane, Vengrow & Textor, LLP
61 Broadway, Suite 3000
New York, New York 10006
(212) 344-7042
Attorneys for
PORT AIR CARGO INTERNATIONAL CORP.


C.A.L. Cargo Airlines
1 Hayarden Street, Airport City P.OB. 271
Ben Gurion Airport 70100, Israel

# EXHIBIT A

S80615065Y



### Aircraft Charter Agreement

THIS AIRCRAFT CHARTER AGREEMENT (the *Agreement*), made and entered into as of this 30th day of May 2006 by and between **ATLAS AIR, INC.** (*AIRLINE*), a Delaware corporation, having its corporate offices at 2000 Westchester Avenue, Purchase, New York 10577, USA; and **SKS LOGISTICS.** (*CHARTERER*), having its principal operating offices at Steenovenstraat 70, B8400 Oostende, Belgium.

### ARTICLE 1.
### Main Principles

1.1   AIRLINE shall charter to CHARTERER the entire capacity of one (1) **B747-200** aircraft, with the following:

The maximum cargo capacity per Flight shall be twenty-nine (29) cargo pallets 125" x 96/88" (inches) on the main deck, nine (9) cargo pallets 125" x 96/64" (inches) on the lower deck, and eighteen (18) cubic meters volume for loose cargo in the lower deck bulk compartment.

1.2   Cargo Description:   **Oil Drilling Equipment.**
       16 pieces 36288 kgs @ 465 x 232 x 226 cms
       46 pieces 122 x 102 x 191 cms (To be broken down into smaller units)
       14 pieces 122 x 102 x 137 cms
       02 pieces 142 x 81 x 91 cms; all 64 totaling 19636 kgs

Aircraft is planned to operate on a route that provides an approximate gross payload of 90,000 kgs, to include pallets. This payload is based on normal operating conditions regarding runway selection, prevailing runways, and runway performance (including alternate and/or re-clearance airports). The AIRLINE'S Dispatch Department at flight time based on the preliminary take-off data will determine the final payload.

1.3   Shipper:                                          Consignee:
       Baltrans Logistics (Netherlands) BV              R.A.D.P./M.D.N./ EM-ANP/D.C.T.
       Leisteen 1                                       Magasins centraus du material des
       2132 ME Hoofddorp                                transmissions (MCMT), 13 Route de
       Postbus 75676                                    Birkhadem Hussein Dey-Alger- Algerie
       1118 ZS Schipol, The Netherlands

1.4   The flight schedule for the aircraft is proposed as follows based upon obtaining the necessary Government Approvals at the time of operation:

Proposed Start date 15th June 2006, Brussels (BRU) to Algiers (ALG)

| Flight Number | Departure Station | Departure Date/Time | Arrival Station | Arrival Date/Time | Remarks |
|---|---|---|---|---|---|
| GT8959 | BRU | 15/1740Z | ALG | 15/2040Z | Load/Unload |
|  |  |  |  |  |  |

* Schedule subject to change

### ARTICLE 2.
### Charter Price & Obligations

2.1   The charter price is USD$108,600 (net) to the AIRLINE.

S80615065Y                                                                 1



S80615065Y

2.2  AIRLINE shall arrange for and pay certain operational expenses incurred during the operation contemplated hereunder, including:

  (a) Aircraft, crew, maintenance, and insurance;
  (b) All fuel and into-plane fueling charges for this flight;
  (c) Landing fees and navigational/overflight permits/fees;
  (d) All Aircraft handling including Aircraft marshalling, air start, ground power units, pushback of Aircraft, stairs, de-icing, and cleaning of Aircraft lavatories;
  (e) Aircraft parking;
  (f) Loading and Unloading of cargo from aircraft only;
  (g) Pallets and nets;
  (h) Catering.

2.3  Additional items not included in the price, and for the account of CHARTERER, not enumerated in Article 2.2 of the Agreement shall be as follows:

  (a) Warehousing, local transportation and ramp transfer of cargo; pallet pass-through charges;
  (b) Any special cargo handling (ie cranes, flatbed trucks, shoring, dunnage, etc);
  (c) Cargo documentation and Customs/Agriculture clearances;
  (d) Royalties / domestic taxes, if applicable;
  (e) Cargo build-up/breakdown to include the provision of plastic and/or other materials to protect the cargo from inclement weather conditions during the loading and unloading of the aircraft;
  (f) The return of the pallets and nets to the AIRLINE's nearest facility within a maximum of twenty four (24) hours at the completion of the flight.
  (g) Cargo Security that meets all security requirements of the Transportation Security Administration, (TSA) including the screening of all non-exempt cargo departing from or destined to the United States. (Non-exempt cargo is defined as: All cargo weighing 150lbs, of a size and shape to admit and conceal a human being that is not shrink-wrapped, banded or otherwise secured from the exterior by locking devices.)

### ARTICLE 3.
### Payments, Invoices and Charges

3.1  10% Payment is due on signing and the balance is due in full to AIRLINE on or before the 9th June 2006 prior to departure of flight in the form of wire transfer to the following account:

JP Morgan Chase Bank
One Chase Manhattan Plaza
New York
ABA # 021000021
Account # 590362135
(Favor of Atlas Air, Inc.)

**When processing the Wire Transfer Document please reference the "Charter Agreement Number" in the top left hand corner of this Agreement.**

3.2  Upon request a invoices shall be forwarded to CHARTERER at the following address and fax number:

SKS Logistics
Steenovenstraat 70
B8400 Oostende,
Belgium
Phone: 011-32-(0)59-707785
Mobile: 011-32-476-440995
Fax: 011-32-(0)59-707786
Email: Joeri@solarisonline.be or jeanpaul@solarisonline.be
Contact: Joeri De Jonghe or Jean Paul Dezutter

S80615065Y                                                            2

S80615065Y

3.3  In the event this Agreement is cancelled by CHARTERER prior to the date of operation, the following amount shall be received and retained by AIRLINE as liquidated damages:

   a)  Twenty-five percent (25%) of the Charter Price if the Agreement is cancelled five (5) or more days prior to the scheduled operation of the Charter.

   b)  Fifty percent (50%) of the Charter Price if the Agreement is cancelled three (3) or more days prior to the scheduled operation of the Charter.

   c)  Seventy-five percent (75%) of the Charter Price if the Agreement is cancelled one (1) or more days prior to the scheduled operation of the Charter.

   d)  One hundred percent (100%) of the Charter Price if the Agreement is cancelled within twenty-four (24) hours prior to the scheduled operation of the Charter.

3.4  AIRLINE will allow, without additional charge, a maximum of four (4) hours layover at point of origin, destination, and during traffic stops for loading and unloading, Customs clearance, etc. After three (3) hours, CHARTERER shall pay AIRLINE Demurrage charges at the rate of $4000.00 per hour for any delays incurred by CHARTERER.

## ARTICLE 4.
### Insurance

4.1  Prior to commencement of operations and during the Term of this Agreement, AIRLINE shall carry the following insurance:

   4.1.1  Workers' Compensation and Employers' Liability insurance required in all states operating under this Agreement:

      (a)  Workers' Compensation as required by law; and

      (b)  Employers' Liability of not less than One Hundred Thousand Dollars (USD $100,000) aggregate limit of liability and not less than USD $100,000 aggregate limit of liability per policy year for disease, including death at any time resulting, there from not caused by accident. 

   4.1.2  Comprehensive General 3rd party Liability insurance, including Airport Premises, Aircraft Liability and Contractual Liability, with a combined single limit per occurrence of not less than Five Hundred Million Dollars (USD $500,000,000).

4.2  AIRLINE warrants to CHARTERER that it will perform its services hereunder in a safe manner and with reasonable skill, and further, that AIRLINE has the requisite federal, state and local governmental authority, as well as all necessary corporate authority to enter into this Agreement. AIRLINE further warrants that all services performed hereunder will be in accordance with all applicable airport and governmental regulations, whether they be federal, state, local, foreign, or international operating laws, rules, regulations, directives and requirements, including those of the Federal Aviation Administration (FAA), the Department of Transportation (DOT), and the airport at which the services are performed.

4.3  AIRLINE shall provide reasonable notification to CHARTERER of any accident or incident involving the Aircraft or cargo which results in any loss or damage to the Aircraft or cargo or to any other property, or which results in injury to or death of any person, which death or injury is related in any way to the services required hereunder.

4.4  AIRLINE shall be solely responsible for the operational control of the Aircraft.

4.5  CHARTERER shall maintain adequate insurance to cover all cargo liability for any loss, delay, or damage to cargo tendered hereunder; and

S80615065Y                               3

S80615065Y

4.5.1 CHARTERER assumes full liability for cargo tendered during transportation hereunder prior to and during loading and during and after the cargo is offloaded from the Aircraft; and

4.5.2 Each Party hereby declares that it has insurance in respect of its liabilities as outlined in this Agreement and, if so requested by the other Party, shall provide the other Party with appropriate insurance certificates to that effect.

## ARTICLE 5.
### Limitation of Liability

5.1 An Air Waybill must be tendered with shipment, as follows:

5.1.1 CHARTERER or its agent shall make out an Air Waybill (the *Air Waybill(s)*) of each shipment in form, manner and number of copies required by applicable laws, rules and regulations and deliver such Air Waybill to AIRLINE at the time CHARTERER or its agent tenders the shipment for carriage by AIRLINE. AIRLINE may require CHARTERER or its agent to make out separate Air Waybills if more than one package is in a shipment, or when all of the shipment cannot be carried in one Aircraft or applicable regulation requires separate Air Waybills.

5.1.2 Any conflict between the terms of the Air Waybill(s) or this Agreement shall be determined by the terms stated herein.

5.2 Subject to the limitations set forth in this Agreement, AIRLINE agrees to indemnify, defend, release and hold harmless CHARTERER, its officers, directors, agents and employees against any and all liabilities, claims, demands, suits, judgments, damages and losses, including costs, expenses and legal fees in connection therewith or incident thereto, arising out of the death of or injury to any person whomsoever (excluding employees of CHARTERER), or arising out of loss of, damage to, or destruction of any property whatsoever, (excluding cargo), caused by or arising out of or in connection to AIRLINE's performance of services hereunder or its possession, use of or maintenance to the Aircraft utilized to provide such services; *excluding, however,* loss of or damage to cargo and death, injury or other damage caused by the negligence of CHARTERER.



## ARTICLE 6.
### Tender and Transportation of Cargo

6.1 Prior to commencement of the Charter Flight, CHARTERER will furnish AIRLINE with a declaration setting forth the complete description, value (if any declared), and weight of all cargo to be transported on the Charter Flight.

6.2 CHARTERER shall properly pack and label the cargo to adequately protect it against damage. AIRLINE retains the right to refuse carriage of cargo, including hazardous materials, which is:

(a) Improperly packed;

(b) Not suitable for carriage on Aircraft; or

(c) Cannot be transported in accordance with the provisions hereof and the applicable tariffs, laws, and governmental or other rules and regulations.

Such right on the part of AIRLINE shall not relieve CHARTERER of responsibility for proper preparation, protection, packaging, and marking of the cargo or impose on AIRLINE any liability for loss or damage resulting from CHARTERER's breach of such responsibility.

6.3 Cargo delivered for transportation which AIRLINE, for any reason, refuses for such transportation, shall be returned to CHARTERER or its agent, at the airport of origin, at CHARTERER's expense. AIRLINE is not responsible for any cargo that cannot be reasonably loaded within the cube capacity or exceeds the operational weight limitation of the Aircraft.

S80615065Y       4

S80615065Y

6.4  CHARTERER shall provide, at its expense, suitable skids or bases to reduce the floor-bearing weight of individual pieces to the Aircraft capability or less. Such skids or bases shall be included in the gross weight of the piece.

6.5  In case of mechanical difficulties, damage to Aircraft, adverse weather conditions, or other circumstances which, in the opinion of AIRLINE, require such action, the Charter Flight may be cancelled or delayed at the point of origin, or any other point, or any point on the itinerary may be omitted. In such event, AIRLINE may take whatever reasonable steps it deems necessary for the protection of itself, other Parties, and the cargo, including sending collect communications for instructions on the disposal of perishable cargo without instructions. In the event of the cessation or delay of Flight for any reason above, CHARTERER agrees AIRLINE will be entitled to the amount stated herein, or a prorated share thereof, in accordance with services performed. CHARTERER shall be responsible for the reasonable cost of providing alternate carriage to destination, or the agreed-upon rates hereunder, whichever is greater.

6.6  AIRLINE is entitled (but not obligated) to comply with the formalities required by Customs, revenue, fiscal, police, and other administrative authorities at place of destination or elsewhere, and to advance any duties, taxes, and other like charges and to make any disbursement with respect to the cargo, on behalf of and as agent for the CHARTERER, and CHARTERER shall be liable for payment thereof. AIRLINE may also entrust completion of these formalities to an agent. AIRLINE shall be considered an agent of CHARTERER only for those financial services enumerated above.

6.7  CHARTERER and cargo owner shall indemnify and shall be jointly and severally liable for payment to AIRLINE for all unpaid charges, advances, and disbursements by AIRLINE, and all costs, expenditures, fines, penalties, losses of time, damages, and other sums which AIRLINE may incur, suffer, or be liable for or by reason of articles included in the shipment which are prohibited by law or are illegal, or which are insufficiently marked, numbered, addressed, packed, or described, including hazardous materials, or for the absence or incorrectness of any export or import license, or any required certificate or document, or for any incorrect Customs valuation or statement of weight or volume. 

6.8  Couriers designated by CHARTERER will be permitted to accompany cargo on Flights in accordance with FAA regulations without additional charges when necessary for protection of cargo or Aircraft. AIRLINE will refuse passage to any person whose condition, in the sole judgment of AIRLINE, will involve hazard or risk to himself or other persons or cargo, or who is not in possession of proper identification, visa or passport.

  6.8.1  AIRLINE's liability to CHARTERER for carriage of couriers is limited to direct damage occasioned by its gross negligence and it shall not be liable for special or consequential damages, including, but not limited to loss of services.

  6.8.2  The Convention limits AIRLINE's liability for death or injury to couriers in international transportation. Couriers must obtain a ticket from AIRLINE for such travel prior to boarding.

## ARTICLE 7.
### General Conditions of Carriage

7.1  AIRLINE may, without notice, substitute an Aircraft. AIRLINE is authorized to select or deviate from the route, notwithstanding the same may be stated herein or upon any Air Waybill. AIRLINE does not undertake to commence or complete transportation or effect delivery of cargo within any particular time. No employee, agent, or representative of AIRLINE is authorized to bind AIRLINE by any statement(s) or representation(s) of the date(s) or time(s) of departure, arrival, or duration of any Flight.

7.2  AIRLINE may cancel the operation of any Flight(s) upon notice to CHARTERER that such cancellation is required because of events beyond AIRLINE's control (*Force Majeure*) and, upon such notice, performance hereunder shall be excused without liability. Examples of events beyond AIRLINE's control are acts of God, weather, strikes, lockouts, or other industrial

S80615065Y

disturbances, acts of the public enemy, wars, blockades, riots, epidemics, lightning, earthquakes, arrests, explosions, accidents to machinery or Aircraft, failure of public utilities, unavailability of fuel, or inability to secure landing slots. It is understood that settlement of any such strikes, lockouts, or industrial disturbances shall be at the sole discretion of AIRLINE and nothing herein shall require settlement of strikes, lockouts or industrial disturbances by acceding to the demand of the other Party to the strike, lockout or industrial disturbance if such course is not advisable, at the sole discretion of AIRLINE. In the event AIRLINE completes any segment of a planned Charter, AIRLINE shall be compensated on a pro rata basis for the portion completed. In the event AIRLINE provides alternate service for any Charter under this Agreement, CHARTERER shall be responsible for all amounts due hereunder.

7.3   AIRLINE shall have exclusive control over chartered Aircraft and crews. All persons and cargo aboard Aircraft shall be subject to the authority of the Captain in charge and shall comply with all rules and regulations of the FAA and AIRLINE.

7.4   It is understood and agreed by the Parties that AIRLINE retains the right to utilize the payload on any positioning and de-positioning Flight, and any available payload not utilized by CHARTERER for other cargo, and that the revenue from such cargo will be retained by AIRLINE and will not reduce or offset the charges to CHARTERER as set forth herein.

IN WITNESS WHEREOF, this Agreement is executed by a duly authorized representative of each Party hereto on the date first hereinabove written.

ATLAS AIR, INC.

By: _____ on behalf of
Name: Peter Beckett
Title: Director Charter Sales
Date: 30th May 2006

SKS LOGISTICS

By: _____
Name: _____
Title: MANAGING DIRECTOR
Date: 31/05/06